Is the appellant ready to proceed? I'm ready to proceed, Your Honor. You may proceed. Good morning, Your Honor. Ryan Lapine on behalf of Sean McGrath, who is one of many victims of a Ponzi scheme perpetrated by Johnny Cope, Michael Booth, and others. I had prepared an introduction for this morning but was compelled by the last oral argument to pivot a bit. We heard in the last case about a trial in which a court made a finding of fact and made a finding of fact following depositions, following trial, following testimony. That's not what happened in this case. In this case, we filed a pleading. We did not have oral argument. We did not have opportunity to amend. And similar to the previous case, the court made a finding of fact on pleadings alone. And that's a very unique posture for a case of this type in Texas or in federal courts. There are four reasons why I believe reversal is warranted this morning. As a preliminary matter, the trial court relied on the Marcus v. Millichap case that came out by the Texas Supreme Court in 2023. And that case cited Little v. Smith, 943 Southwest 2nd 414, which is a 1997 Texas Supreme Court case that is good law today. It is the leading case for the principle, quote, generally, in a case of fraud, the statute of limitations does not commence to run until the fraud is discovered or until it might have been discovered by the exercise of reasonable diligence. I feel loud this morning. Well, I'll just ask him to turn it down a bit. It's rare that it's too loud, but it's too loud. I'm excited to be the first. All right. And what happened in Marcus v. Millichap is so different than what happened in this case. In Marcus v. Millichap, and I apologize if I'm butchering it, there was an individual who was a realtor that acted as a dual agent. And the allegation was that the realtor made representations to a purchaser of a gas station. And the representation was that the rents were going to come in every month. And that's a quote. The rents stopped coming in. And what that gas station owner said was, I didn't know that there was a fraud. I didn't know that anything was wrong. And what the court found in TREEx was that the action of the failure to pay rents should have put that gas station owner on notice that a representation that rents would come every month was false. But they applied it even as to the law firm that had a fiduciary duty. So TREEx there, the Texas Supreme Court saying, it can, if you've got enough red flags to point you to the injury, even fraud, it's going to apply to others that are participating. Yes or no? I think what the court said there was that they had reason to reasonably investigate. And after a finding of fact on summary judgment, there was testimony of an admission by the plaintiff that he knew that the agent had offered subservient, had offered substandard representation. And therefore, it gave rise to the injury-causing actions. But it did not abdicate. And I want to go into what the Texas Supreme Court of Appeal did next. It did not abdicate the rule that indicates a fraud. The fraud must be discovered for the statute of limitations to run. You discovered the fraud, right? You sued Booth on time. We sued Booth in 2020. In 2020, two years later, fraud was discovered. OK. It was not discovered in 2018, but it's really critical as to why it wasn't discovered. The representations that Johnny Cope made, and I put it in my pleadings, but I really need to emphasize, Johnny Cope, the state of New Mexico, stopped their business to honor him. He was that revered of a business leader. He and Artie Hubbard founded the Bighorn. Oh, but, OK. I mean, I was in the legislature. We honored people. Hopefully, we didn't honor people who were swindlers and potheads and whatever. I'm not saying it never happened. Yeah, don't say it never happened. I won't say it never happened, but be that as it may, Mr. McGrath knew in 2018 that Booth and Cope were copacetic. They were friends and knew that Cope was saying, oh, no, Booth is great. He's awesome. I mean, he joked about him being a money launderer or whatever, but he also said, oh, he's a great stand-up guy, all these things, and so it was Cope's representations in what, March or February of 2018 that got McGrath to lend him the money. Absolutely, and Booth would never have gained it. But, I mean, those aren't in dispute, right? It's not disputed as far as McGrath talking to Cope, talking to Booth, loaning the money, all those things that happened in the spring of 2018. Absolutely correct. And what continued happening in 2018 and 2019 differentiates this from so many other Ponzi scheme cases. Lucerne Performance Golf Carts, as confirmed by the Desert Sun article, was a going concern. When was that article? What's that? When was the article? The article was in November of 2018. Okay. And the article mentioned 18 lawsuits. 14 of them didn't involve Michael Booth. They involved the predecessor company. There were four lawsuits that involved Michael Booth. Two of them I filed. They were Earl Morley's lawsuits. And Earl Morley certainly, by 2019, and it wasn't in 2018, by 2019 knew that this was not merely a case of money not being invested properly. How did he find that out? Earl Morley subpoenaed the bank records from where the money went that was objected to production. We had to go in on a motion to compel in 2019. At the very end of 2019, we got those bank records. And at the very end of 2019, it established that the money was not being used to fund the golf cart business, that the money was going to Johnny Cope himself, was going to Michael Booth, was going to pay for a rent at the Balboa Bay Club. But prior to that point in time, all that was known, and I want to get into Earl Morley's case because it's important here. All that was known was that Michael Booth was taking out capital loans for a very successful company that was very clearly cash poor. And the reasonable conclusion that could be drawn from it—  Go ahead. You go. Well, I was going to say, I mean, a month-long note that had a gigantic, what, 25% monthly interest rate? Three defaults in three months? Well, and here's what I would say to that. And he is—I mean, he was known to have spent over a decade in federal penitentiary. That was all known at the time, right? I understand that. And I would say—I want to answer both of those questions. I think there's several points. Well, no, answer his. Okay. So the interest rate was high. That was what was proposed by Booth. And I think that, you know, the argument has been made by the defense that this was illegal and it was usurious and my client didn't act because of it. Well, but McGrath is an accredited investor or whatever they call it, because of his net worth. I'm assuming that. But, I mean, this is not mom and pop or, you know, the widows and the orphans at the back of the church. These are sophisticated people, are they not? I wish you could meet my client. He's not—I want to be careful here. I think that my client was presented with a business deal and my client signed it. Well, I guess I'm not judging or prejudging or casting aspersions at anyone. I mean, certainly not your client, but it just kind of brings to mind if it's too good to be true, it often is. No, and I agree with that. And, I mean, he had the basic building blocks of the knowledge of that. Back to Judge Higginson's question, the prison term, the crazy high interest rate, the three defaults in two months. He knew all that in the spring of 2018. He did know all that in the spring of 2018. And his buddy, Cope, was saying, oh, no, no, no, Booth is good. Booth is cool. You can do business with Booth. But if it was just Cope saying Booth is cool, you could do business with Booth, that would be one thing. But in this instance, the PGA Tour has golfers tweeting out with certain performance golf cards. The Tiger Woods Foundation endorsed these products. They had two showrooms in Palm Desert. I bet you— Well, could you just clarify, Dr. Ryan, are you saying that the period never began because he didn't discover the injury, as in fraud, or are you saying it was told, the end of it, because of fraud? Well, so there's two different doctrines. Two different doctrines. Right. Which one is the one that saves you here? I think they both do. I know. But which one— Is your argument that Cope himself hid his con man participation? Well, that's part of it. Cope did hide his participation. Cope wrote the settlement check in the Morley case. None of us knew that until 2022. Cope opened the Rio Doso bank account. He was banking the operation. Literally no one knew that until Caldwell Marks, who was another victim, subpoenaed bank records and found that it was Johnny Cope who was the one that was capitalizing it. Johnny Cope never disclosed that the money going into this enterprise was going to him. They all represented that Michael Booth was driving a Ferrari and that he was going to sell this Ferrari because he got too far over his skis, he took too much money out of the business, and this is why they needed capital. Come to find out, it was Johnny Cope's Ferrari. None of us knew this. So, yes, it was concealed fraudulently. But one thing I think that's important here that I really want to hit on... Okay, so that would accept that you knew there was the injury at the outset. I don't think anyone's denying, and we would never deny that there was no knowledge that he wasn't repaid. That wouldn't be credible. We know that he wasn't repaid. But what the cause of action for fraud requires is C-enter. And merely not paying a promissory note does not give rise to the fact that there was fraud. And again, you distinguish Treax Howe in that statement because there you have a default. Because in Treax, you have a default, but there was full evidentiary testimony where it came out. Treax was on summary judgment. Exactly. And here we have a motion to dismiss. And we haven't even been given leave to amend. But in Treax, what's critical is that the plaintiff came out and said, yes, I knew that the representation was bad. There is no evidence here, nor could there be evidence that at the time this cause of action, that at the time the default occurred, my client knew that there was fraud. I would have been thrown out of court and the underlying opinion establishes it. If I would have filed a fraud suit based on bad advice, that doesn't mean that there's fraud. It just means that the loan didn't get paid back quickly. And I want to say, in the startup community, the mere fact that a startup is cash poor and continues to operate and can't pay its loans right away doesn't establish fraud. It shouldn't happen, but it's very common. And that was what my client believed what was happening here. But I want to talk about what the Texas Court of Appeals did in 2024, after our briefing, but prior to the order coming out, in the estate of yours. What it held in not applying Marcus and Milichap to a fact pattern much more similar to ours is, quote, unless reasonable minds cannot differ on issues like discovery of the wrong and reasonable diligence, these issues are for the fact finder to resolve. This is a question of fact. Did my client know at the time that this default occurred that there was center? Did he have the opportunity to reasonably investigate? The court concludes he did nothing, but that's inconsistent with the pleadings. In paragraph 54 of the complaint, we allege that my client spoke to Cope, spoke to Booth, and was under the impression that an attorney named John was blocking repayment. How could he have known that an attorney named John was blocking repayment if, as the court concluded, he had zero investigation at all? One, the investigation, whether it was reasonable, is a question of fact. It should be interpreted as a motion to dismiss in the light most favorable to my client, and certainly was not. And the conclusions the court reached were all wrong. If given leave to amend, we would amend and truthfully allege that my client went to Artie Hubbard, who was the founder of Bighorn, he was the real estate developer, he was the most esteemed member, and went to Artie Hubbard and asked what was happening. Why is Earl Morley suddenly out of the club? What's going on with this article? And Artie Hubbard said, I invested in the previous business Booth was involved in and got my money back. You're fine. All of these allegations are spurious. My client could not have gone and gotten the bank records from Wells Fargo that established that this money was being misallocated absent a subpoena. And certainly my client could have filed a lawsuit for breach of contract against Michael Booth, but I already knew that the only reason we got the bank account statements from Wells Fargo in the Morley suit was because there was an allegation of fraud and that allegation of fraud differs so greatly from the facts here. With Earl Morley, after there was repayment, Michael Booth told Earl Morley that his daughter had cancer and needed another $91,000 to pay for treatment until Earl Morley wrote the check. The only fraud that was known of until the end of 2019, which by the way would put us within the four-year statute of limitations, was that Michael Booth was lying about a daughter having cancer. That is a far different animal than the fact that Johnny Cope and Michael Booth were taking money out of the bank account for Lucerne, writing themselves large checks, renting private jets to go fly on vacation, and I don't know the polite way of saying what they were doing with Camilla Hoffman, but they were doing it. And none of that was known at the time. It was intentionally concealed. You weren't disputing that Texas law applies here as to these documents? I would candidly question that, and I want to... Questioning it is not, what did you argue below and what have you argued thus? Did you ever argue that California law applies? We didn't argue California law. We argued New Mexico law applied. Okay, and in the record, did you state to Judge Jackson how New Mexico law is different than... We did. You did? And it's in our brief. That's all right. You preserved the argument. Yeah, we preserved the argument. What is the advantage New Mexico law would have given you? Well, so New Mexico law... And if I could quote this, I want to get the quote right on this. And I may reserve this for rebuttal time, but New Mexico law... And it's McNeil v. Burlington Resources Oil and Gas, 153 P. 3rd 46, quote, In New Mexico, a cause of action arises not necessarily at the time of injury, but rather at the time a plaintiff knows or should have known of the claims. We believe that the court misinterpreted below Marcus and Milicep v. Triax because Marcus and Milicep expressly reserved the holding that the Texas Supreme Court put forth in Little in 1997. But to the extent that Judge Counts interpreted Marcus v. Milicep correctly, that's inconsistent with how New Mexico would rule. And in New Mexico, it's not when the injury arose, but when he knew or should have known of the claims. Here, the claim requires scienter. It's when my client knew or should have known that there was fraud. And the reason why... It doesn't require knowledge of a specific defendant. It still is, when did he know the scienter as in Michael Booth's scienter to fraud? That's New Mexico law, although New Mexico also endorses the fraudulent... The fraudulent concealment doctrine where if a defendant like Johnny Cope did here conceal their involvement, you do not get rewarded for that concealment. You don't get rewarded for opening up a secret bank account. You don't get rewarded for misrepresenting that the cars were Michael Booth's. You don't get rewarded for writing secret settlement checks so that things cannot come out in public court. And that's what happened here, by the way. When Earl Morley settled, it was at a mediation in front of Judge Kevel Romney in the Central District of California days prior to a hearing when this information would come out. And suddenly there was a very large check written to Earl Morley to go away. That check was written... Your time has expired. Thank you, Your Honor. Mr. Kaiser. Good morning. My name is Steve Kaiser. I represent the estate of Johnny Cope. I appreciate the opportunity to be before the court. May it please the court, I'll be addressing the central limitations issue. On behalf of the appellees, Caitlin Hubbard, who represents Jonathan Patrick Cope, will share part of the time that I have. We ask the court to affirm for two basic reasons. First, under Texas law, Mr. McGrath's claims accrued when he knew or should have known of the wrongfully caused injury. And neither fraud nor conspiracy accrual law waits for him to learn the specific contours or the specific nature of each wrongful act that may have caused the injury or the identity of all wrongdoers. Secondly, under TRIACS, that's the way I pronounce it anyway and I'm not going to try to pronounce the other names, TRIACS, KPMG, PPG, AGAR, and like authorities, McGrath knew of his precise injury in 2018. When he extended illegal loans to a known criminal, in large part based on Mr. Cope's representations, that he was credit worthy and then he defaulted three times in two months. No pleading amendment can change those facts. They're set out clearly in the pleadings. Do you agree that if we applied New Mexico law there'd be a different result? No. I think New Mexico's law is exactly the same. The fact that one judge may have interpreted it one way or another, I think in our brief we show that the New Mexico law is the same. And in fact, even if it's not the same, it was not shown that New Mexico has the most significant relationship to the cause of action. It'd really be California, wouldn't it? Yeah, I mean, New Mexico's way down the list. The suit's filed in Texas. Mr. Cope's paper seeds were in Texas. Mr. McGrath alleges that the events giving rise came in Texas. But in California, Booth's a resident of California, McGrath is a resident of Massachusetts, has a second home in California. All the representations or loans were made in California. The district court found that in ruling on the New Mexico Unfair Practices Act claim that none of these conduct affected any resident of New Mexico, and that's a finding that hasn't been challenged. And so the... ...cases on fraudulent concealment, were any of them decided at the 12B6 stage? Or are they all summary judgment? I think they're all summary judgment. Because that sort of makes sense. Fraudulent concealment turns on equity, right? And so the difficulty here for me is the clock isn't running when there's fraud. The fraud has to be discovered. I think it's an inference that the fraud was discovered as to Booth, but he didn't plead that Copes was participating in the fraud. What the cause of action alleged here is this, that... ...and the backdrop is important. I can't remember whether it was Justice Wilson or... ...who said, this gentleman in the pleading say this, that Booth was very candid about his criminal past, 12 years in prison, money laundering, Ponzi schemes, exactly like the one they allege here, taking money from people, not paying it back, wire fraud, money laundering, very candid with Mr. Cope about all of that. So that's the backdrop. What he claims is the cause of action in this case is not the Ponzi scheme. It's that Mr. Cope fraudulently induced him to make these loans, these short-term loan shark type loans, one month at a time, because he convinced him that he was creditworthy and could be trusted and would pay the loans back. When did he understand that that injury occurred? Immediately upon default. Three defaults, in fact. Within three months. That's the injury. And he knew of that injury. Cope's then concealed that he's got the bank accounts. He's participating. Not sure how it puts him on notice. I mean, he timely sued Booth, but he just didn't know Cope's could have been duped too. I think he's a good investment. Right? Let me answer it this way. What the injury does is put Mr. Booth, I mean, Mr. McGrath. Sorry, I'm going to get these names wrong. Gets Mr. McGrath on, puts him on inquiry notice under Triax. He's on inquiry notice. What does he need to do at that point? Obviously, he asked Mr. Cope, and Cope assures him, oh, no, no, you'll be paid. That's a little bit like me saying, I'm going to loan you, Judge, you're loaning me $1,000. He's on inquiry notice to inquire, but I am more focused on fraudulent concealment. If he's pleading that Cope's is constantly hiding that he's a con man rather than duped too. One thing I'll say is, why does he, why does Mr. McGrath get to rely? Part of the fraudulent concealment thing is that you knew of the wrong, you concealed the wrong, the injury, which the injury wasn't concealed here. The injury, everybody knew. But the injury was caused by Booth not paying McGrath back on the debt. How is Cope involved in that? He fraudulently induced McGrath. Well, I mean, we know that now. I guess the question that we're dancing around is, is it premature to do this on the pleadings? How is it that we can hold McGrath as a matter of law to have known all of this and been on inquiry notice to have discovered this in 2018? He doesn't have to know the full contours of the fraud. Not the full contours, but just... Or even Cope, he has to know that he was injured. Then he has to conduct diligence. That's the discovery rule, right? No, it's both. It's fraud and... Well, they kind of end up at the same place. Both of you dealt with it, so I appreciated that. But the case subsequent to Triax in Texas, a state of ewers, does seem to support their argument. Remind me how you distinguished that decision, the Court of Appeals decision? Because that really was very similar to these circumstances. Well, Triax was very similar to these circumstances. No, I know, but I'm asking you to just speak specifically to the ewers, however it's pronounced. E-W-E-R-S. One of the things... In the ewers case, they distinguished Triax. In ewers, there were initial huge investments made to invest in a corporation, and it was loans that were supposed to be paid back. Ewers, then, it's... And those defaults, there was a default on those loans, but the plaintiffs were convinced by Mr. Ewers that we've put this money into this new deal, this doobie deal, and your investment's going to grow. They sent them checks from time to time. They sent them regularly, actually fictitious checks, supposedly being returns on investment. They sent them fictional income statements over a period of 5 to 10 years. The fraud continued. The discreet injury wasn't discovered actually until Mr. Ewers died. The point being that that is a different case. It's a long-term investment case. The court in ewers found that we have no evidence that any of the appellees had actual notice of the injury-causing conduct. And because the plaintiffs, I'm reading here a quote, did not know of their injury within a limitation period, the tri-ex courts' decision is not applicable. I think they missed it there, because as the dissent... I think Ewers is wrong legally. I do think it's wrong legally. We think the dissent got it right because they congealed all of the limitations cases and said the original breach of the loan agreement should have put them on inquiry notice. The two judges against the dissent sidestepped that and said we just don't think tri-ex applies because there was all this continuing ongoing fraud, no direct evidence of any actual injury. And let me say this about Ewers. It's a 2-to-1 split decision with a strong dissent. Summary judgment. It was a summary judgment, I believe, but it's never been cited. There was no petition for review filed in the Supreme Court, so the Supreme Court didn't get a chance to weigh in and say no, no, no, wait, tri-ex. So we believe that Ewers' court's wrong and the dissent got it right. But you agree that in determining to grant this motion to dismiss, the court made a factual determination. In fact, I think what the court did is apply Twombly and Iqbal and all those cases, judged the absolutely stated facts and said I'm using my common sense, I'm using my experience to determine that the injury occurred, the diligence and inquiry was required, there's no evidence, no pleadings that any of that was done, and I know there were things that could have been done as far as diligent. No diligence at all was exercised. And the rule is that if you could have done that diligence and you could have discovered this, then you're bound by that knowledge even though you didn't do it. So what could he have done? All of that may be true, but to make that determination on the pleadings? You're suggesting that maybe it should be a summary judgment, brother? I'm not just suggesting it. I might be voting that way, but... We don't need any other facts. For purposes of summary judgment, the facts are stated. The loans were made. They had a due date. The default was a certain date. He knew the injury was occurred. There's no pleadings of any diligence. You may know the injury, but you need to know the cause of the injury. If the injury is simply that I didn't get the money when it was supposed to be paid, that's the injury, but without knowing the cause of the injury. So you should sue immediately. He could have sued. Copes? He could have sued Cope for fraudulent inducement. But he's asking questions and they're saying it's blocked up by an attorney, so it's not that he closed his eyes and waited. He's asking, it's the fraud and concealment of Cope that we're talking about, not whatever Booth's telling him. Cope didn't say anything about an attorney or answer it himself. He did make, he took steps. He didn't close his eyes and wait. He took steps, and naively he's told this is being blocked up for other reasons. The steps he took, he could have took, I mean, I believe Booth. Again, the backdrop. I trust, you know, I know that you're a convicted felon. This man tells me that you're not going to do that again. But it does happen again, so you're back to your old ways. The judge can determine on the pleadings that he should have trusted Booth. Just on the pleadings. I think that that's not a judgment that he made. But I think, again, when you're determining plausibility on pleadings and you're looking at the facts as pleaded, you can't just say, we're going to ignore common sense and experience. We know there are things that he could have done. You're weighing the facts on the pleadings. I don't think so, but maybe so. All right. Maybe so. What's the status of the estate proceedings in California? I think it's closed. So there's no Rooker-Feldman issue here? No, I'm sorry, what? The money that you're seeking is to direct, is compensation for, it's being sought, is compensation for the tort of copes, has nothing to do with the estate money? Correct. I mean, there's a fraudulent transfer claim that the administrators of the state, knowing that there was a creditor out there, have sold assets and done things like that. So there's a fraudulent transfer claim against Ms. Hubbard's client and Ms. Brewer individually as administrator of the state. If there are no further questions, I'll see you the rest of my time. Ms. Hubbard. All right. Thank you, Counsel. May it please the Court, Caitlin Hubbard on behalf of Jonathan Patrick Cope, not to be confused with Johnny D. Cope, who is now the estate. As the Court is well aware, we have alternative issues on the Tufta claims waiver. Given the questions today, I would like to rely on my briefing and address some of the questions that the panel has raised. With respect to the New Mexico law issue first, the district court held that there had been no showing of a conflict, which is, of course, the first threshold analysis. We cited cases on page 45 of our brief to show that the plaintiff alleging that a different state's law should apply has the burden to show the conflict. And when they don't do it in the district court, it's waived. More than that, in this court, they don't allege the substantive legal conflict. They are citing case-specific outcomes. What the district court appropriately said in a footnote is, it's just that Texas is more developed in this area. There is no substantive legal conflict, and it's waived regardless because the conflict wasn't shown below. I want to turn now to the issue about, well, we didn't know of Cope's involvement. Two answers to that. The first one is that it has long been the law in Texas that you don't have to know of all contributing wrongdoers, even under the discovery and the fraudulent concealment doctrine. But more than that, a case nowhere cited in their reply brief that we cited quite a bit in our response is the Texas Supreme Court's 2019 decision in Agar. Agar held, for the first time in Texas, changing the law, that a conspiracy claim does not extend the limitations period or accrual date for an underlying tort, that it runs completely coterminously with the underlying tort. So this notion of, well, we... Even if it's being fraudulent? It didn't involve fraudulent concealment or discovery, but the same concept would apply to the underlying tort just as it would to the conspiracy. So the point is, the accrual date is the same for both, no matter if you view it just under the straight-up accrual date rule, or if you view it under discovery, or you view it under fraudulent concealment. The point is that a conspiracy, a conspirator doesn't somehow extend it. And that is, like I said, completely consistent with the laws we've understood it for years in PPG, that in Russell, that it doesn't matter if you don't know of all contributing wrongdoers. I do... Yes, Your Honor. Would you agree that yours, the majority, is just a wrong decision? I think there's two responses to that. I think yours is a different case, number one. The issue there, they want to just talk about, well, there was this initial seed money that was to be repaid in 59 days. Yours was a lot more than that. Yours was an actual exchange of significant money in exchange for a 6 percent profits interest, after which, for five years, everybody thought, oh, there's this Citadel deal that's been papered, and we have a 6 percent profits interest in it, and after five years we're going to have a bag of money at the end. The whole time the guy is sending income statements, actually paying money. That is a true investment ongoing deal. And what the majority said in that case is, here it's the misappropriation of the investment capital that they thought that there was a deal done that was never aimed. Here we have a loan with defined due dates, three breaches, three months. So under Texas law, when you look at the fraudulent concealment cases, and I've got them right here, the question is not, well, did you know of the specific nature of the cause of action? I would point the court to the KPMG decision, where the Texas Supreme Court rejected exactly that. That list of cases you've got in front of you, which of them is 12B68? They're not. But if you look at page 45 of our brief, we cite cases from this court that rejected equitable tolling doctrines on the pleadings. So they do exist. I'm looking, because we're in Texas, I'm looking specifically to the Texas Supreme Court cases, but I want to be very clear to the court that in KPMG, Texas Supreme Court rejected the Court of Appeals when the argument or the holding of the Court of Appeals was that we have to know the specific nature of the claim. Texas Supreme Court said no. We have no such, quote, new formulation. The rule is, under discovery and fraudulent concealment, that you have to know of a wrongfully caused injury. So here, there was an injury. We know it was wrongfully caused. Don't you have to have some basis for Cope's involvement in the injury? Well, I do think there was some basis. The whole allegation is I wouldn't have invested but for Cope. I think there's some basis, but can we say that on the pleadings? I think you can say it on the pleadings just like you can say it on summary judgment, Your Honor. The pleadings here make very clear that the basis for the investment was this is a legitimate investment. Just like in Triax, the statement was this is a sure-fire investment. And the Texas Supreme Court held, and that was not just a breach of fiduciary duty case, Your Honors. There's a footnote that says we apply the same analysis to the fraud and the conspiracy claims that were also at issue in that case. The court said you're on inquiry notice for both discovery and fraudulent concealment. Any correction to the status of the estate? I don't know. No, Your Honor. I'm sorry about that. So for all of those reasons, we just want to be very clear that this notion that they had to know about the specific fraud. PPG from Texas Supreme Court said no, we don't care if it was defective design and you didn't know that. You don't have to know the specific claim. You have to know that there was a wrongfully caused injury, which was known here. Triax makes that very clear. I do think yours is a different case, but I think the dissent also has a better reading of Triax. Thank you. Thank you, counsel. Rebuttal. Thank you, Your Honor. I want to clarify what the actual fraud allegation is here because I believe it was misstated. The allegation, which is in paragraph 80 of the complaint, is that Cope falsely represented to McGrath and many other potential investors that the golf cart business was a legitimate lawful enterprise. The golf cart business continued to operate until the pandemic with a few showrooms. It's a fact-specific inquiry, as the Court noted, but the reasonableness, if you have inquiry notice, it's not enough to merely show that you needed to take more steps. It's what would those steps have revealed. Everything readily available, which is a fact-specific question to my client, was that the representation that the business was operating was operating. The representation that we allege that the money would be used solely to finance the purchase of equipment, without getting their bank account records, which we couldn't have done without subpoena, we couldn't have found. So there's no way of knowing, one, that Cope was involved, but two, that there was a fraud afoot at all with the allegations. Counsel spoke of the KPMG case, which was a 1999 case from the Texas Supreme Court. But in 2017, in 2023, Marcus Versch Millichap confirmed that Little v. Smith is the controlling law. And the law is, quote, again, generally, in a case of fraud, the statute of limitations does not commence to run until the fraud is discovered or until it might have reasonably been discovered by the exercise of reasonable diligence. That's a fact-specific inquiry. I believe the panel has it right that at the pleading stage, we were not given the opportunity to show the facts of what it is that we did. But still further, paragraph 54 of the complaint talks about this attorney named John, the conversations with Mr. Cope and with Mr. Booth. That is not consistent, those allegations, with the finding by the trial court that we had no inquiry whatsoever and we just sat on our hands. I want to go to— Mr. Hubbard is right in your reply brief. You didn't discuss AgarCorp. I'm sorry? You didn't discuss AgarCorp, which you relied on heavily. AgarCorp is a civil conspiracy case. We did not because we didn't—I mean, we were appealing to issues that were— How would you address it? Well, the fraudulent concealment doctrine applies to civil conspiracy as much as it applies to fraud. That's consistent in Texas law. It's also consistent in New Mexico law. As she noted, that case didn't involve fraudulent concealment. So what would happen in the absence of someone like Johnny Cope hiding bank accounts, is different than when he has a secret bank account. He's paying settlements. And I just don't think it's applicable to these facts. But one other thing. Counsel stated that we could have sued right away. The trial court didn't even believe that. Here's what the trial court said. The trial court said, Imagine Johnny Cope didn't know Booth was running a Ponzi scheme and generally thought it was a good investment opportunity for McGrath. After Booth performed his own perverse version of Steve Miller's bands, Take the Money and Run, but in real life and not the song itself, Johnny Cope would still be why McGrath lost his investment because Johnny Cope sourced, advised, and encouraged McGrath to do the deal. In this scenario, Johnny Cope's investment advice wouldn't have been fraudulent. It would have just been terrible advice. And certainly my client believed it was terrible advice, but he had no reason to believe that he could sue Johnny Cope. Until years later, when he found out that Cope paid the settlement, when he found out that Cope had a secret bank account, when he found out that the money wasn't being spent on the business, but it was being— I'm sorry, did McGrath—just remind me, did McGrath allege in the complaint that he wouldn't have made the loans without Cope's representation? Absolutely alleges that. And Cope— But, I mean, that sort of catches you, doesn't it? Because that means that, by definition, what you're saying is Cope's representations were the key to the deal. It was a key to the deal, but the fact that the— But no, it's a but-for cause for the loan to have happened. I don't think that he would have made the loan without Cope saying, and I think it's alleged, that this is a legitimate business and that this is money that's going to be going towards the business. But I think it's a little bit more complex than that. This was a closed community. If Your Honor or I wanted to go there and we knew a member, we could only be present there with the member at our side. You and I, we couldn't walk freely. Booth could. Cope gave him this impromptu tour of reliability by giving him unfettered access. McGrath knew that, too, at the time, right? McGrath did know he gave him that access. That makes Cope even more important to the genesis of the deal. Cope was important to the genesis of the deal. But doesn't that put you on an inquiry notice when the deal defaults? It puts us on an inquiry notice, and he inquired. That's a fact-specific question. And he went back and tried to find out, and that's when he found out this attorney named John. He went to R.D. Hubbard. Again, we were never—we didn't plead around in affirmative defense. We didn't know what was coming. But if given the leave to amend, we would have. You didn't know that there would be a statute of limitations issue? I didn't know that they would raise this issue to—I believe that I'd be given an opportunity for leave to amend, candidly, if it was raised. But with that said, you know, he took all the steps necessary. I'm not quite sure what more he could have done to find out this was a fraud when Tiger Woods is endorsing the business that supposedly, you know, is— Didn't he visit a showroom? Yeah. He not only visited the showroom. Michael Booth was delivering cars to the Bighorn Club on a daily basis until the pandemic. You could just sit there and see them arriving. There is no reason to believe that this was anything other than a loan repayment. The last point, and I know I'm out of time. In a state of yours, they believed it was a long-term investment and that they were going to make money. My client was in the same position. This was a thriving business. Putting money into the only supplier of golf cars in a community that relied on them didn't seem like a bad idea. Thank you, counsel. Thank you. The court will take this matter under advisement. We are adjourned.